FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 08, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KATHRYN A.,[1]

             Plaintiff,

    v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

             Defendant.

No. 4:21-cv-5098-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff Kathryn A. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ's decision failed to adequately address probative evidence, the Court reverses the decision and remands this matter for further proceedings.

//

/

---

[1] For privacy reasons, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

## I.     Five-Step Disability Determination

A five-step evaluation determines whether an adult claimant is disabled.[2] Step one assesses whether the claimant is engaged in substantial gainful activity.[3] If the claimant is engaged in substantial gainful activity, benefits are denied.[4] If not, the disability evaluation proceeds to step two.[5]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[6] If the claimant does not, benefits are denied.[7] If the claimant does, the disability evaluation proceeds to step three.[8]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[9] If an impairment or combination of impairments

---

[2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[3] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[4] *Id.* §§ 404.1520(b), 416.920(b).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[7] *Id.* §§ 404.1520(c), 416.920(c).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[11] If the claimant can perform past work, benefits are denied.[12] If not, the disability evaluation proceeds to step five.

Step five, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, the claimant is found disabled.[14]

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

---

[10] 20 C.F.R. §§ 404.1520(d), 416.920(d).

[11] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[14] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

Even if the claimant is found disabled, however, where the records contains medical evidence of drug or alcohol addiction, the ALJ must then determine whether such use is a material factor contributing to the disability.[17] To determine whether drug or alcohol use is a material factor contributing to the disability, the ALJ evaluates which of the current limitations would remain if the claimant stopped using drugs or alcohol and then determines whether any or all of the remaining limitations would be disabling.[18] Social Security claimants may not receive benefits if the remaining limitations without drug or alcohol use would *not* be disabling.[19] The claimant has the burden of showing that her drug or alcohol use is not a material contributing factor to disability.[20]

## II.  Factual and Procedural Summary

In January 2014, Plaintiff filed a Title 2 application for Disability Insurance Benefits, alleging disability since April 2012 due to major depressive disorder with psychosis.[21] The application was denied initially and upon reconsideration.[22]

---

[17] 20 C.F.R. §§ 404.1535(a), 416.935(a).

[18] *Id.* §§ 404.1535(b)(2), 416.935(b)(2).

[19] 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535, 416.935; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[20] *Parra*, 481 F.3d at 748.

[21] AR 81.

[22] AR 109–15, 117–21.

**A.    The 2016 Hearing and Decision**

In March 2016, Administrative Law Judge (ALJ) Tom Morris held a hearing and, in June 2016, issued an unfavorable decision.[23] The Appeals Council denied Plaintiff's request for review, and Plaintiff sought review by this Court. In May 2018 the Court issued a judgment and order granting the parties' stipulated motion for remand.[24]

While the original claim was pending in this Court, Plaintiff filed a second application for Disability Insurance Benefits under Title 2, along with an application for Supplemental Security Income under Title 16.[25] Upon remand from the Court, the Appeals Council consolidated Plaintiff's original application with the new applications.[26]

**B.    The 2018 Hearing and 2019 Decision**

In December 2018, on remand, ALJ Marie Palachuk held a second hearing.[27] In February 2019, she issued an unfavorable decision.[28] Plaintiff did not file a request for review with the Appeals Council and the Appeals Council did not take

---

[23] AR 20–31.

[24] AR 886.

[25] AR 1021–27.

[26] AR 904, 925.

[27] AR 788–829.

[28] AR 763–78.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

its own review. Plaintiff again appealed to this Court, and in May 2020, the Court reversed the 2019 ALJ decision and remanded for further proceedings.[29]

On remand, the Court instructed the ALJ to "reevaluate the medical evidence and Plaintiffs subjective complaints, formulate a new RFC, obtain supplemental testimony from a vocational expert, if necessary, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim."[30]

**C.    The 2021 Hearing and Decision**

In April 2021, on remand, ALJ Palachuk held a third administrative hearing by telephone. Plaintiff failed to appear at this hearing but was represented by counsel, and the ALJ received testimony from medical expert Michael A. Lace, PsyD., and vocational expert Susan Foster.[31] After the hearing, the ALJ issued a decision again denying Plaintiff's disability applications.

1.    <u>The ALJ's Underlying Five-Step Findings</u>

In conducting the five-step sequential evaluation process, the ALJ made the following findings:

- Step one: Plaintiff has not engaged in substantial gainful activity since April 26, 2012, the alleged onset date. However, Plaintiff worked at

---

[29] AR 1962–73.

[30] AR 1973.

[31] AR 1900–1925.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1
2
3

substantial gainful activity levels in the 3rd and 4th quarters of 2020, so the decision "concerns the period without the substantial gainful activity."[32]

4
5
6
7

- Step two: Plaintiff has the following medically determinable severe impairments: major depressive disorder, generalized anxiety disorder, borderline personality disorder, and polysubstance abuse/addiction (heroin and alcohol).

8
9
10
11
12

- Step three: Including Plaintiff's substance use, the severity of her impairments meets the criteria of listings 12.04, 12.06, and 12.08. "However, the claimant's impairments would improve if she were to stop using substances, would impose only mild to moderate limitations, and would not meet or medically equal any of the impairments listed. . . ."[33]

13
14
15

- RFC: If Plaintiff stopped the substance use, she would have the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

16
17

  o "able to understand, remember and carry out simple, routine and repetitive tasks/instructions";

18
19

  o able to maintain attention and concentration on simple, routine tasks for two-hour intervals between regularly scheduled breaks";

---

[32] AR 1874.

[33] AR 1875.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

- o "needs a predictable environment with seldom changes in the work setting";
- o "no more than simple work-related judgment/decision-making";
- o "no fast-paced production rate of work";
- o "only occasional/incidental contact with the public"; and
- o "only occasional/superficial interaction (defined as non-collaborative/no teamwork) with coworkers and supervisors."
- Step four: Plaintiff is unable to perform past relevant work.
- Step five: If Plaintiff stopped the substance use, considering her RFC, age, education, and work history, she could perform work that existed in significant numbers in the national economy, such as "cleaner industrial," "cleaner II," and "dry cleaner helper."[34]
- DAA: "[S]ubstance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if [s]he stopped the substance use" and, as such, Plaintiff has not been disabled within the meaning of the Social Security act at any time from the alleged onset date to the ALJ's decision in April 2021.

2.  The ALJ's Findings Regarding Plaintiff's Symptom Reports

In reaching her decision, the ALJ largely discounted Plaintiff's symptom reports based on finding them inconsistent with prior statements and other

---

[34] AR 1887.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

evidence of record. The ALJ explained, "Of particular significance, the claimant has consistently misrepresented her drug and alcohol abuse to treating providers, making it difficult for them to provide a correct diagnosis/treatment."[35] The ALJ further noted records that "document ongoing issues with medical non-compliance, inconsistent statements/presentation, and continued misrepresentations regarding substance use."[36]

### 3. The ALJ's Medical-Opinion Findings

In assessing the medical opinions, the ALJ assigned weight as follows:

- "little weight" to the November 2015 opinions of Plaintiff's treating physician, Benjamin F. Gonzalez, MD;
- "little weight" to the November 2015 opinions of Plaintiff's treating counselor, David Lowe, LMHC;
- "some weight" to the December 2018 testimony by reviewing medical expert Jay Toews, EdD, except "no weight" was given the portion in which Dr. Toews said he would defer to Dr. Gonzalez and Mr. Lowe regarding Plaintiff's likely rate of workplace absenteeism;[37] and

---

[35] AR 1880.

[36] AR 1880. Plaintiff does not challenge these findings.

[37] It appears that Dr. Toews is also referred to in the record as a "Dr. Jerry M. Tabes." *See* AR 1978.

- "great weight" to the April 2021 testimony by reviewing medical expert Michael A. Lace, PsyD.

4. <u>Plaintiff's Appeal</u>

Plaintiff did not file a request for review with the Appeals Council and the Appeals Council did not undertake its own review; the ALJ's 2021 decision thus became the final, appealable decision of the Commissioner.[38] Plaintiff then timely appealed to the Court.[39]

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[40] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[41] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[42] Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court

---

[38] *See* 42 U.S.C. § 405(g).

[39] *See* 20 C.F.R. §§ 404.981, 422.201.

[40] 42 U.S.C. § 405(g).

[41] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[42] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[43] The Court considers the entire record.[44]

Further, the Court may not reverse an ALJ decision due to a harmless error.[45] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[46]

## IV.    Analysis

Plaintiff contends that the ALJ erred by rejecting certain medical opinions and by failing to provide sufficient findings regarding the paragraph C criteria."[47] Underlying each of Plaintiff's arguments, however, is her assertion that the ALJ failed to "properly evaluate the claimant's functioning in the absence of substance

---

[43] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[44] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[45] *Molina*, 674 F.3d at 1111.

[46] *Id.* at 1115 (cleaned up).

[47] ECF No. 13 at 8.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 11

use."[48] For the reasons that follow, the Court finds that the ALJ once again failed to adequately address significant probative evidence tending to support Plaintiff's claims.

**A.    DAA Findings: Plaintiff establishes consequential error.**

Plaintiff argues that the ALJ "failed to address the updated medical record," asserting that the overall record shows "ongoing severe symptomology even during times of sobriety."[49] In doing so, Plaintiff challenges the ALJ's DAA determination that, overall, the medical records "clearly show that the claimant's substance abuse has been the material cause of her most significant mental symptoms and limitations."[50]

1.    The ALJ's DAA Findings

The ALJ provided an extensive, largely unchallenged summary and analysis of Plaintiff's treatment history, which included several of the newly received medical records. The ALJ's analysis connected Plaintiff's functional limitations to her substance use by highlighting positive drug tests and evidence of Plaintiff giving inconsistent—if not plainly false—reports regarding her substance use. The ALJ interpreted the evidence to show that Plaintiff "has experienced a significant improvement in her overall mental health condition with medication compliance

---

[48] ECF No. 13 at 8; *see generally* ECF No. 13.

[49] ECF No. 13 at 10, 15; *see also id.* at 11, 13, 19–20 (asserting similar arguments).

[50] AR 1879.

1 and abstinence from drugs and alcohol,"[51] finding that the treatment records

2 "document no significant suicidal ideations, paranoia or hallucinations, during

3 periods of sobriety and medication compliance."[52]

        2.     <u>Plaintiff's Citations to Probative Medical Evidence</u>

As support for her argument that the record shows she experiences severe symptoms even in the absence of substance use, Plaintiff cites to two mental-health episodes that she contends the ALJ failed to properly consider.[53]  First, the medical records show that in June 2019, Plaintiff reported suicidal ideation with a plan.  A corresponding treatment note stated, "She reports attempting to harm herself in the past but only when drinking alcohol.  She indicated this time she had not been drinking and has been sober for 11 months and this scared her."[54]  Second, in October 2019, Plaintiff was psychiatrically hospitalized with reports of suicidal thoughts, which occurred, Plaintiff contends, "despite ongoing abstinence from alcohol and a diagnosis of sustained remission."[55]

---

[51] AR 1879.

[52] AR 1880.  *See also* AR 1877 (finding that "the claimant has not had any psychiatric hospitalizations during periods of sobriety").

[53] *See* ECF No. 13 at 11.

[54] ECF No. 13 at 5–6 (citing AR 2475).

[55] ECF No. 13 at 6, 11, 16 (each time citing AR 3492–98).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

      *a.*    *The ALJ erred by failing to address the June 2019 records.*

Though the ALJ summarized much of the rest of 2019, she made no mention of Plaintiff's 2019 admission to the transitions unit or the contemporaneous treatment notes. Plaintiff consistently reported that, at that point, she had been sober since July 2018—about 11 months.[56] Yet, after seeming to improve for much of that period,[57] around the end of May 2019 she started reporting worsening moods, and by June 2019, she was expressing suicidal ideations about drowning herself in the river.[58] Throughout that entire period, Plaintiff consistently reported maintaining her sobriety, and the record reveals no reports or other evidence indicating otherwise.

The medical records from June 2019 appear to contradict the ALJ's findings that the treatment records "document no significant suicidal ideations, paranoia or hallucinations, during periods of sobriety and medication compliance."[59] Such severe symptoms absent substance use would also tend to suggest that the documented cycles of Plaintiff's improvement and regression might be tied more closely to her non-DAA mental impairments than was found by the ALJ. After all,

---

[56] *See, e.g.*, AR 3010, 3022, 3068.

[57] *See, e.g.*, AR 3022, 3060, 3068.

[58] AR 2467, 2475.

[59] AR 1880. *See also* AR 1877 (finding that "the claimant has not had any psychiatric hospitalizations during periods of sobriety").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

the symptoms resulting from depressive and anxiety disorders are expected to wax and wane.[60]

Although an ALJ is not required to discuss every bit of evidence in the record, the June 2019 medical records not only constitute "significant probative evidence," but they are also seemingly inconsistent with the ALJ's findings; the ALJ therefore erred by rejecting such evidence without explanation.[61]  Further, the Court cannot say this error was harmless.  The ALJ's finding that the record lacked any indication of such severe symptoms absent substance use was central to the ALJ's analysis and ultimate DAA conclusion. Remand is required to address this error and any ambiguity regarding whether Plaintiff had severe symptoms even absent substance use.

    b. <u>The ALJ overstates the October 2019 evidence of drug use.</u>

Unlike those from June 2019, the ALJ specifically mentioned medical records from October 2019.  In her summary of the newly received evidence, the ALJ said, "In October 2019, the claimant was seen in the ER with suicidal ideation and she tested positive for methamphetamine."[62]  The contemporaneous treatment notes, however, do not support such a finding.  First, the record cited by the ALJ

---

[60] *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence. . . .").

[61] *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).

[62] AR 1881.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

states only that a urine test was positive for "Amp/Methamphetamine," a class of stimulants broader than just methamphetamine.[63] Additionally, contemporaneous treatment notes further explained that this drug screen "was positive for amphetamines, which is a potential false positive due to Wellbutrin."[64] Plaintiff had been taking prescribed Wellbutrin for years.[65] And none of the other medical records from that period suggest that Plaintiff was using methamphetamine or any other non-prescribed substance at the time.[66]

Again, when Plaintiff expressed suicidal ideation in October 2019, she consistently reported ongoing sobriety since July 2018. If true, this would further support Plaintiff's claims that she experienced severe mental-health symptoms even absent substance use. Additionally, because the ALJ did not address the

---

[63] *See* AR 1881 (citing lab result at AR 3243).

[64] AR 3492 (explaining potential false positive due to prescribed medication).

[65] *See* AR 739–40, 1131.

[66] The Court notes that there is also cause to question the evidence that the ALJ relied upon in finding that "[i]n January 2021, the claimant was suicidal and tested positive for PCP." AR 1882. This finding is supported by treatment notes. *See* AR 3530 (Dec. 2020: "Later returning lab showed was positive for PCP."); AR 3552 (Jan. 2021: "UDS [from late December 2020] was positive for PCP."). However, the only lab results of record for that episode showed negative on the phencyclidine screen. *See* AR 3252, 3258.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

issue, the potential for amphetamine false positives also brings into question the ALJ's other references to positive tests for methamphetamine and/or amphetamines.[67] This is especially true given that the medical expert at the 2018 hearing specifically confirmed that Plaintiff had "never used methamphetamines" and the drug results referred to at that hearing by the ALJ were instead positive for amphetamines because Plaintiff "had overused her Adderall."[68]

### 3. Plaintiff's Treatment and Improvement

Because this matter is already being remanded, to provide additional guidance on remand, the Court notes that the ALJ must provide clear explanations when evaluating any improvement in Plaintiff's symptoms and the significance of such improvement. First, as mentioned, it is common for the kind of mental-health symptoms at issue to wax and wane.[69] Additionally, marked improvement—particularly measured shortly after inpatient care—does not necessarily indicate substance use was to blame. To the contrary, the Commissioner has specifically noted that "a record of multiple hospitalizations, emergency department visits, or

---

[67] *See* AR 1880 (finding Plaintiff "has also denied ever using meth/speed, but her urine drug screen in 2016 was positive for amphetamines and records from 2017 document ongoing amphetamine use").

[68] AR 803.

[69] *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence. . . .").

other treatment for the co-occurring mental disorder—with or without treatment for DAA—is an indication that DAA may *not* be material even if the claimant is discharged in improved condition after each intervention."[70]

It must also be remembered that while Plaintiff was being treated for substance use, she was also being treated for her other mental-health disorders. "Improvement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use."[71]  Even where a claimant receiving mixed treatment improves from being disabled while using substances to becoming gainfully employed while sober, this, by itself, does not establish that substance use was a material factor to the initial disability.  After all, the claimant's functional improvement may instead be attributable to the successful treatment of her other mental-health disorders.  "If the evidence in the case record does not

---

[70] SSR 13-2p, *Titles II & XVI: Evaluating Cases Involving Drug Addiction & Alcoholism (DAA)* (S.S.A. Feb. 20, 2013) (emphasis added).

[71] SSR 13-2p, *Titles II & XVI: Evaluating Cases Involving Drug Addiction & Alcoholism (DAA)* (S.S.A. Feb. 20, 2013).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorder(s), [the Commissioner] will find that DAA is *not* material."[72]

## V. Conclusion

The ALJ failed to address medical evidence that appears to support Plaintiff's allegations of experiencing severe mental-health symptoms and having related limitations even absent substance use. Such evidence is relevant to nearly every aspect of the ALJ's analysis and DAA findings, including the evaluation of medical opinions and Plaintiff's symptom reports. Though it is unfortunate that so much time has already elapsed since Plaintiff first filed her claims, remand is once more necessary because the record does not clearly establish whether Plaintiff is disabled.[73] Having already determined remand is required, the Court need not address Plaintiff's other arguments.

On remand, the ALJ shall conduct anew the disability evaluation, beginning at step two, and specifically address the medical evidence identified above as well as any other medical evidence that suggests Plaintiff experienced severe mental-health symptoms absent substance use. To assist the ALJ in parsing out the impact of Plaintiff's substance use versus her other mental disorders on not only

---

[72] SSR 13-2p, *Titles II & XVI: Evaluating Cases Involving Drug Addiction & Alcoholism (DAA)* (S.S.A. Feb. 20, 2013) (emphasis added).

[73] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

her limitations, but also any subsequent improvements, the Court strongly encourages the ALJ on remand to supplement the record with opinions from Plaintiff's current mental-health treatment providers and/or a medical expert specializing in dual diagnoses of substance-use disorders and co-occurring mental disorders.

Accordingly, IT IS HEREBY ORDERED:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. The Court **REVERSES** the ALJ's decision and **REMANDS** the matter to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff.

5. The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 8th day of September 2022.

                s/Edward F. Shea
                EDWARD F. SHEA
           Senior United States District Judge